ORIGINAL

FILED
IN CLERKS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

2004 JAN 20 P 2: 59

U.S. DISTRICT COURT
DISTRICT OF MASS.

ECHOSTAR TECHNOLOGIES
CORPORATION

04  10129 REK

Plaintiff,

MAGISTRATE JUDGE Collings

COMPLAINT

Civil No.

- against -

ALBERTO DAVID,

Defendants.

Plaintiff, **ECHOSTAR TECHNOLOGIES CORPORATION** ("ECHOSTAR"), brings this action against Defendant(s), **ALBERTO DAVID**, and hereby seeks injunctive relief and compensatory and statutory damages for Defendant's unlawful purchase, acquisition, employment and use of satellite piracy devices, all of which are primarily designed, produced and/or marketed for the purpose of circumventing the encryption and other signal protection technological measures employed by ECHOSTAR to prevent the theft of and unlawful access to ECHOSTAR's satellite television programming.

## JURISDICTION

This Court has original federal question jurisdiction and supplemental jurisdiction over this action under the Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq.* Alternatively, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (a) (1) by virtue of the complete diversity of citizenship of the parties in an action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff, ECHOSTAR, by and through its counsel, LONSTEIN LAW OFFICE, P.C., upon information and belief, alleges as follows:

1

INTRODUCTION

1. Plaintiff, ECHOSTAR, operates throughout United States a state-of-the-art satellite entertainment programming service. ECHOSTAR delivers hundreds of channels of digital entertainment, and informational programming to homes and businesses equipped with specialized digital satellite system equipment. ECHOSTAR provides different levels of programming based on the particular subscription package that a ECHOSTAR subscriber purchases. ECHOSTAR encrypts its satellite transmissions and employs technology specifically designed to limit programming access to only those lawful subscribers who pay for its services. The technology partially relies on "access cards" provided to consumers as components of the digital satellite system equipment and which, upon activation by ECHOSTAR, decrypt ECHOSTAR's satellite signals and permit subscribers to view programming. These access cards are but one of the security measures employed by ECHOSTAR in order to protect its programming against unauthorized access ("Pirating").

2. Upon information and belief, Defendant **ALBERTO DAVID** (hereinafter "Defendant DAVID"), is an individual who acted in conjunction with third parties, including, but not limited to, manufacturers and suppliers of pirating devices, purchased, acquired, employed other otherwise used said devices specifically to circumvent ECHOSTAR's encryption access controls to permit the decryption and unauthorized receipt of ECHOSTAR's television programming

3. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant DAVID is subject to personal jurisdiction in this District by virtue of his intentional purchase, use, employment, installation or other illegal use of pirate devices within this District. Additionally, venue is proper in this District under 28 U.S.C. § 101 because a substantial part of the events giving rise to the claim occurred in this District.

THE PARTIES

4. ECHOSTAR is a Texas corporation with its principal place of business located at 5701 S. Santa Fe Drive, Littleton, Colorado.

5.      Upon information and belief, Defendant DAVID is an individual who, resides at 11 Tilton Terrace, Apartment 1F, Lynn, Massachusetts 01902, and who is or was a subscriber to the services of ECHOSTAR, or who is accessing the proprietary signals using a digital satellite dish along with a pirate device without purchasing any level of service from ECHOSTAR.

FACTUAL BACKGROUND

ECHOSTAR AND THE SATELLITE
TELEVISION BROADCASTING BUSINESS

6.      ECHOSTAR has invested billions of dollars to develop a nationwide, state-of-the-art digital satellite entertainment service. ECHOSTAR delivers television programming to millions of subscribers in the United States equipped with digital satellite system hardware. This hardware consists of a satellite dish, an integrated receiver descrambler ("IRD") and an access card that is necessary to operate the IRD. Through this technology, ECHOSTAR offers programming including major cable networks, studio movies and special events offered on a pay-per-view basis, local network channels in select areas, and a variety of other sports and special interest programs and packages. ECHOSTAR has the exclusive right to broadcast via satellite some of these programs.

7.      Purchasers of digital satellite system equipment can subscribe to various packages, of ECHOSTAR programming, for which the subscriber pays a fee. Subscribers can also order pay-per-view events and movies, either by using an on-screen menu and a hand-held remote control device, or by calling ECHOSTAR and ordering the program over the telephone.

8.      ECHOSTAR sells programming, most of which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters and other programming copyright holders. ECHOSTAR contracts and pays for the right to distribute the programming to its subscribers. In addition, ECHOSTAR holds exclusive satellite distribution rights in some of the programming and it creates its own original content programming, to which ECHOSTAR owns the copyright.

## SIGNAL ENCRYPTION

9. ECHOSTAR delivers its programming from its earth-based uplink centers which first compress, encrypt and digitize programming before transmitting the signals to multiple satellites located in orbit thousands of miles above the earth.

10. Upon reception by the satellites, the signals are transmitted back to earth, where they can be received by ECHOSTAR's subscribers homes or businesses which are equipped with digital satellite system dishes and IRDs. Once received by the dish, the signals are transmitted by wire to the IRD. The IRD acts like a computer which processes the incoming signal using a conditional access security device, which, in turn, allows the encrypted signal to be viewed by authorized subscribers.

11. The conditional access security system, which looks much like a credit card, was developed by ECHOSTAR in conjunction with others to ensure that only lawful customers would be able to view its programming.

12. After a customer installs the dish, IRD and access card at his home or business, the access card blocks access to ECHOSTAR programming until the customer purchases one or more programming packages from ECHOSTAR. When the customer subscribes to a package, ECHOSTAR electronically activates the subscriber's access card in accordance with that subscription. The access card then acts as a re-programmable microprocessor and uses "smart card" technology to (a) control which ECHOSTAR programming the subscriber is permitted to view; and (b) capture and transmit to ECHOSTAR the subscriber's pay-per-view information.

13. Because ECHOSTAR generates its revenues through sales of subscription packages, it must be able to condition access to programming on the purchase of legitimate subscriptions. Accordingly, ECHOSTAR devotes substantial resources to the continued development and improvement of its security system.

14. As is often the case with new technology, almost simultaneously with introduction into the marketplace, modern day pirates engage in the process of breaking through security measures to gain access, without payment, to proprietary signals such as those owned by ECHOSTAR. As a result, ECHOSTAR has a constant need to modify existing and develop new technologies designed and intended to battle piracy.

15. By circumventing ECHOSTAR's security measures, pirates gain full access to all of ECHOSTAR's programming, including pay-per-view events. Because the access cards are the primary security mechanism relied on by ECHOSTAR, the primary focus of satellite piracy has been modifying and selling "pirate" access cards and selling devices that enable such modification.

16. But for the employment of "pirate" access cards, only lawfully paying customers of ECHOSTAR should be able to view its proprietary signals, the combined monthly value of which, if accessed illegally by one person, exceeds tens of thousands of dollars.

17. ECHOSTAR's ability to attract and retain subscribers, protect and maintain rights to distribute copyrighted programming, and to prevent unnecessary increases in rates charged to lawful customers which result from losses associated with piracy depends on ECHOSTAR's ability to successfully combat pirates. Despite such security measures, including the civil prosecution of the pirate industry, ECHOSTAR's business has suffered and continues suffer monumental losses.

## DEFENDANTS' UNLAWFUL ACTIONS

18. Upon information and belief, Defendant DAVID personally uses or used such pirate devices to illegally access the proprietary signals of ECHOSTAR.

19. On information and belief, the pirate device (s) that Defendant DAVID purchased, or otherwise acquired have only one purpose: the bypassing of ECHOSTAR's encryption protection to permit the unlawful decryption of ECHOSTAR's signal and the unauthorized receipt of television programming.

20. Upon information and belief, Defendant DAVID acquired, purchased or otherwise obtained pirating device (s), as well as related equipment, specifically designed and modified for, marketed and advertised as enabling unauthorized access to ECHOSTAR's proprietary signals and defeating both signal encryption as well as electronic countermeasures ("ECMs") employed by ECHOSTAR., all without payment.

21. Upon information and belief, the pirating devices not only allow unauthorized access to ECHOSTAR's proprietary signals, but also restores ECHOSTAR access cards damaged by ECMs and enables the cards to again allow circumvention of ECHOSTAR's access control security.

22. Upon information and belief, Defendant DAVID uses or used said pirate device (s) with knowledge that the devices are used to circumvent technological measures that effectively control access copyrighted works and that protect the exclusive rights of copyright owners.

23. Upon information and belief, the pirate device(s) used by Defendant DAVID'S serve one primary purpose: they are meant to bypass ECHOSTAR'S encryption protection and, thus, permit the unlawful decryption of ECHOSTAR's signal and the unauthorized receipt of television programming.

24. By acquiring said pirating device (s), Defendant DAVID has intentionally engaged in the unauthorized decryption and reception of ECHOSTAR's satellite television programming and electronic communications for financial gain.

25. Defendants DAVID'S conduct as alleged herein has caused and continues to cause ECHOSTAR irreparable harm.

## COUNT I
## ASSISTING THE UNAUTHORIZED DECRYPTION OF SATELLITE PROGRAMMING IN VIOLATION OF 47 U.S.C. §605(a) AND (e) (4)

26. ECHOSTAR repeats and realleges Paragraphs 1 through 25, inclusive, and incorporates them by reference herein.

27. Defendant DAVID received ECHOSTAR's transmissions, without authorization by ECHOSTAR and for his own benefit, in violation of 47 U.S.C. § 605(a).

28. Defendant DAVID acquired, assembled, modified, sold and/or distributed pirate devices knowing or having reason to know that they are primarily of assistance in the unauthorized decryption of direct-to-home satellite services, in violation of 47 U.S.C. § 605 (a) and (e) (4).

29. Defendant DAVID violated 47 U.S.C. § 605(a) and (e)(4) willfully and for the purposes of direct or indirect commercial advantage or private financial gain.

30. With full knowledge that ECHOSTARS' proprietary signals were not to be received and exhibited by those unauthorized to do so, Defendant DAVID and/or his agents, servants, workmen or employees unlawfully intercepted, received and/or de-scrambled ECHOSTARS' satellite signals and did receive ECHOSTARS' programming at the above-captioned address, or other addresses, presently unknown to Plaintiff, at the time of their transmission, willfully and for purposes of direct or indirect commercial advantage or private financial gain.

32. 47 U.S.C. §605 prohibits the unlawful interception and use of communications such as the transmission for which Plaintiff, ECHOSTAR, owned or had the distribution rights thereto.

33. By reason of the aforementioned conduct, Defendant DAVID willfully violated 47 U.S.C. §605(a).

34. By reason of Defendant DAVID'S violation of 47 U.S.C. §605 (a), Plaintiff, ECHOSTAR, has a private right of action pursuant to 47 U.S.C. §605.

35. As a result of Defendant DAVID'S willful violation of 47 U.S.C. §605 (a), Plaintiff, ECHOSTAR, is entitled to the greater of its actual damages or statutory damages, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii), of up to $110,000.00 as to each pirate device purchased, owned, used, employed, or otherwise acquired by Defendant DAVID.

36. Pursuant to 47 U.S.C. §605, Plaintiff, ECHOSTAR, is also entitled to an award of full costs, interest and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ECHOSTAR seeks a judgment against Defendant DAVID as follows:

A. For a grant of preliminary and permanent injunctive relief restraining and enjoining Defendant DAVID and his employees, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or in participation with them, from the following acts:

(1) possessing, purchasing, acquiring or otherwise dealing in any pirate devices, or any other technology, product, service, device, component, or part thereof, that

(a) are primarily designed or produced for the purpose of circumventing the encryption access control protection contained in the software on ECHOSTAR's access cards, or any other technological measure adopted by ECHOSTAR that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming;

(b) have only limited commercially significant purpose or use, the purpose of which is to circumvent ECHOSTAR's encryption access control protection, or any other technological measure adopted by ECHOSTAR that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming; or

(c) are knowingly acquired by Defendant DAVID and/or others acting in concert with Defendant for use in circumventing ECHOSTAR's encryption access control protection, or any other technological measure adopted by ECHOSTAR that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming; and

(2) or in any other way, assembling, modifying, possessing or using any pirate devices knowing or having reason to know that such devices are primarily of assistance in the unauthorized decryption of direct-to-home satellite services; and

(3) in any other way, manufacturing, assembling, possessing, selling, acquiring or otherwise using any electronic, mechanical, or other devices, the design of which renders them primarily useful for the purpose of the surreptitious interception of electronic communications.

B. For an Order impounding all pirate devices or other circumvention or signal theft devices or equipment in the custody or control of Defendant DAVID or related entities that the Court has reasonable cause to believe were involved in a violation of 47 U.S.C. § 605.

C. Award ECHOSTAR the greater of its actual damages or statutory damages, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii), of up to $110,000.00 as to each pirate device purchased, owned, used, employed, acquired, re-sold and/or distributed by Defendant DAVID.

D. For an award of ECHOSTAR's costs, reasonable attorneys' fees, and investigative fees.

E. Prejudgment interest on all and damages granted by this Court.

F. Such other and further relief as the Court deems just and proper.

Dated: January 14, 2004
Ellenville, NY

ECHOSTAR TECHNOLOGIES CORPORATION

BY: _____
WAYNE D. LONSTEIN
Attorney for Plaintiff
LONSTEIN LAW OFFICE, P.C.
Office and P.O. Address
1 Terrace Hill : P.O. Box 351
Ellenville, NY 12428
Telephone: (845) 647-8500
Facsimile: (845) 647-6277
*Our File No. ECT-4MA-01*