UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
ECHOSTAR TECHNOLOGIES CORP.,                        )
        Plaintiff                                   )
                                                    )
        v.                                          )        CIVIL ACTION
                                                    )        NO. 04-10129-REK
ALBERTO DAVID,                                      )
        Defendant                                   )
_____        )


**Memorandum and Order**
January 26, 2005


**I.  Pending Matters**

Pending for decision are matters related to the following filing:

Plaintiff's Motion and Memorandum in Support of Entry of Default (Docket No.

5) (filed May 20, 2004).


**II. Background**

On January 20, 2004, the plaintiff filed the Complaint in this suit, alleging that the

defendant had used a modified device to intercept the plaintiff's satellite signals. On April 7, 2004,

the plaintiff requested entry of default, which was granted by this court on June 16, 2004.

On May 20, 2004, the plaintiff moved for default judgment against defendant.


**III. Analysis**

"[A] default, which exists here, constitutes an admission of all well-pleaded factual

allegations in the complaint, except for those relating to damages." <u>Comcast of Massachusetts I,</u>

Inc. v. Naranjo, 303 F. Supp. 2d 43, 49 (D. Mass. 2004) (citation omitted). The plaintiff,

Echostar Technologies Corp., provides subscription-based satellite television service throughout

the United States. (Compl., Docket No. 1, ¶ 1) The defendant, Alberto David, used a "pirate"

access device to bypass Echostar's encryption of its satellite signals. (Id., ¶ 20) It is alleged in the

complaint, and considered admitted here, that the defendant assembled or modified this device

himself. (Id., ¶ 28)

      The plaintiff has provided some further elaboration of the facts in its memorandum

in support of its motion for default judgment. (Docket No. 5) These allegations were not

submitted as an affidavit or other sworn statement. Therefore, they are simply argument of

counsel and cannot be considered as evidence of damages. I will, nonetheless, repeat those

allegations here as they provide further background.

      The allegations are that David was a legitimate subscriber of Echostar from July

17, 2002, until November 27, 2002, when he returned his satellite receiver that had been provided

to him by Echostar. (Id., ¶ 11) In May 2003, Echostar became aware of David's unauthorized

reception of signals by finding a "six wire connector" soldered to the main circuit board of the

satellite receiver. (Id., ¶ 10) This modification, allegedly made by the defendant, enabled David to

receive programming beyond his paid subscription. (Id.)

      In its motion for default judgment, the plaintiff has requested a total judgment of

$123,691.52, comprising statutory damages, interest, attorneys' fees, and costs. I address each of

the plaintiff's requests in turn.

      The plaintiff has brought suit under the Communications Act, which provides for

statutory damages. 47 U.S.C. § 605(e)(3)(C). The plaintiff claims two awards under that section:

one for violation of § 605(a), which prohibits, among other things, interception of satellite signals

without authorization, and a second award for violation of § 605(e)(4), which prohibits, among

other things, assembly or modification of a pirate access device. The plaintiff has established the

defendant's liability under those respective sections through the pleadings in its complaint, which

are admitted by default. The plaintiff has elected statutory damages, as provided in the

Communications Act:

> [T]he party aggrieved may recover an award of statutory damages
> for each violation of subsection (a) of this section involved in the
> action in a sum of not less than $1,000 or more than $10,000, as
> the court considers just, and for each violation of paragraph (4) of
> this subsection involved in the action an aggrieved party may
> recover statutory damages in a sum not less than $10,000, or more
> than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

The plaintiff urges this court to simply choose the maximum penalty, for a total of

$110,000 in statutory damages. I rejected a similar argument in Comcast of Massachusetts I, Inc.

v. Naranjo, 303 F. Supp. 2d 43 (D. Mass. 2004). That case was brought under the Cable Act, 47

U.S.C. § 553, which allows statutory damages between $250 and $10,000. In that case, I

concluded that the phrase in that statute, "as the court considers just," provided discretion for the

court to determine the amount of the statutory damages:

> Under the statute, the determination of "just" statutory damages
> is . . . generally a matter for exercise of a court's discretion.
>
> * * *
>
> Exercising discretion, I conclude that I should award as "just"
> statutory damages as reasonable an estimate of actual damages as
> the facts here allow.

3

Naranjo, 303 F. Supp. 2d at 48. I then calculated an estimate of actual damages based on the amount a paying customer would pay for the amount of cable services the defendant was likely to have intercepted. Id. at 49–50. The damages provision in the Communications Act uses identical language to that in the Cable Act: "as the court considers just." Compare 47 U.S.C. § 553(c)(3)(A)(ii) with 47 U.S.C. § 605(e)(3)(C)(i)(II). I conclude that the proper course in this case is to award as statutory damages "as reasonable an estimate of actual damages as the facts here allow." Naranjo, 303 F. Supp. 2d at 48.

In the present case, the plaintiff has offered the affidavit of a consultant in the field of satellite television signal interception. This affidavit consists of various arguments why satellite television piracy is harmful, generally, but does not provide a suitable basis for a reasonable assessment of actual damages in this case. The affidavit suggests that a satellite television pirate could illegally access $1.3 million worth of material per year. (McGinnis Aff., Docket No. 5, at ¶ 13) This estimate is facially unreasonable, however, because it must assume that the viewer watches every available pay-per-view event, including multiple events at the same time. I rejected a similar estimate of actual damages in Naranjo. See id., 303 F. Supp. 2d at 49 ("[N]o defendant could partake of all the cable services made available by the illegal descrambler, nor do I find it plausible that a defendant would order pay-per-view services 24 hours a day, every day of the month."). Accordingly, the plaintiff's proffered affidavit is not helpful in determining damages.

The plaintiff also cites several cases that have applied a maximum statutory award or an enhanced award for willfulness and private financial gain. These cases are inapposite. Two of the cases cited by the plaintiff involved a defendant who was the owner of an entertainment establishment or tavern, in which it could be inferred that the pay-per-view events were

intercepted for the purpose of showing to a paying customer. See Cablevision Systems New York City Corp. v. Faschitti, 38 U.S.P.Q.2d 1156, 1158 (S.D.N.Y. 1996) (bar owner charged $10 per customer to watch pay-per-view fight); Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc. No. 2, 172 F. Supp. 2d 810, 812 (S.D.W. Va. 2001) (bar owner intercepted pay-per-view fight). The plaintiff has not alleged that the defendant, an individual, received such private financial gain from his theft of signals. The remaining cases cited by the plaintiff involve defendants who sold modified cable boxes. See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1005 (2d Cir. 1993) (defendant had sold modified cable box for $250); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 589–90 (E.D.N.Y. 1997) (defendant sold two cable boxes to plaintiff's investigators for $265); Century ML-Cable Corp. v. Diaz, 38 F. Supp. 2d 121, 125 (D.P.R. 1999) (defendant sold modified cable boxes to a list of 750 clients); Time Warner Entertainment/Advance-Newhouse Partnership v. Worldwide Electronics, L.C., 50 F. Supp. 2d 1288, 1302 (S.D. Fla. 1999) (defendant's sole line of business was sale of modified cable boxes). The plaintiff has not made such an allegation in this case. The plaintiff has established, by default, only his allegation of the conclusion that "Defendant DAVID [sic] violated 47 U.S.C. § 605(a) and (e)(4) willfully and for the purposes of direct or indirect commercial advantage or private financial gain." (Compl., Docket No. 1, at ¶ 29) Based on the facts before me, I am not persuaded that this case merits anything more than the statutory minimum in damages.

The plaintiff requested in his complaint that this court award enhanced or exemplary damages, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). (Compl., Docket No. 1, ¶ 35) In its motion for default judgment, the plaintiff appears to have abandoned that theory of recovery. The cases in which that provision is invoked, however, are instructive in assessing the magnitude of

damages to impose. The court has discretion whether to apply enhanced damages pursuant to that

section:

> In any case in which the court finds that the violation was
> committed willfully and for purposes of direct or indirect
> commercial advantage or private financial gain, the court in its
> discretion may increase the award of damages, whether actual or
> statutory, by an amount of not more than $100,000 for each
> violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii) (emphasis added). The plaintiff has not provided this court with any

specific reason to apply enhanced damages, as would be the case if the defendant was a

commercial establishment or was selling decoding technology for financial gain. In a similar case,

the United States District Court for the District of Maine rejected the plaintiff's request for

enhanced damages where no evidence was presented that intercepted signals were used for any

purpose other than private, residential viewing. See DirecTV v. Haskell, 344 F. Supp. 2d 761,

764 (D. Me. 2004). The only published opinion in this district awarding enhanced damages

awarded $2,500, and that amount was awarded in a case in which the defendant was a commercial

entertainment establishment. See Joe Hand Promotions, Inc. v. Salinetti, 148 F. Supp. 2d 119,

123–24 (D. Mass. 2001). I conclude that awarding enhanced damages in a case in which the

defendant is simply a private residential viewer is inappropriate.

I conclude that the plaintiff has not provided the court with any basis to award

more than the statutory minimum of damages, or $11,000.00. I will afford the plaintiff an

opportunity to provide evidence upon which this court might make a higher award. Accordingly,

the order below directs the Clerk to schedule an evidentiary hearing to determine damages.

The plaintiff has also asked the court to award it interest at the rate of 9% annually from the "date of violation." (Pl.'s Motion, Docket No. 5, at 3) According to the plaintiff, this award of interest is "pursuant to the statute." (Id., at 7) The plaintiff has provided no basis in law for such an award of interest. The United States District Court for the District of New Hampshire was faced with a similar, unsupported request for 9% interest in a cable interception case and rejected that request. See Gelb Sports & Entertainment v. Auer, 2000 WL 33667089, *1 (D.N.H. 2000). The Communication Act contains no provision for awarding interest in addition to statutory damages. See 47 U.S.C. § 605. Accordingly, I will award the federal judgment rate from the date of judgment, pursuant to 28 U.S.C. § 1961(a), but no more.

Finally, the plaintiff requested attorneys' fees and costs of $240.00. Attorneys' fees and costs are available pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). The plaintiff has not provided an affidavit of hours worked or a reasonable rate for those hours worked. Accordingly, I have no basis upon which to award attorneys' fees. The plaintiff provided copies of an invoice for a process server fee of $90.00 and states in his motion for default judgment that the filing fees were $150.00. These figures must be appropriately supported by a sworn affidavit before this court can award any amount for attorneys' fees and costs under the statute.

I cannot award attorneys' fees or costs at this time.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Plaintiff's Motion and Memorandum in Support of Entry of Default (Docket

No. 5) is ALLOWED insofar as the Clerk is ordered to enter a Judgment by Default.

(2) A hearing on damages is scheduled for **2:30 p.m.,  February 24, 2005.**


        /s/Robert E. Keeton
        Robert E. Keeton
        Senior United States District Judge